UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| SPANSKI ENTERPRISES, INC., |
| Plaintiff/Counterclaim-Defendant, |
| - against - |
| TELEWIZJA POLSKA S.A., |
| Defendant/Counterclaim-Plaintiff. |

**ORDER**

19 Civ. 1619 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this declaratory judgment action, Plaintiff and Counterclaim-Defendant Spanski Enterprises, Inc. ("Spanski" or "SEI") seeks a preliminary injunction against Defendant and Counterclaim-Plaintiff Telewizja Polska S.A. ("TVP") barring TVP from (1) interfering with Spanski's distribution of TV Polonia programming in North or South America; or (2) distributing or transmitting TV Polonia programming in North or South America. (Proposed Ord. (Dkt. No. 14)) For the reasons set forth below, Spanski's motion for a preliminary injunction will be denied.

## BACKGROUND

**I.  THE CONTRACT**

This action arises from an exclusive distribution agreement for Polish-language television programming. Spanski is a Canadian corporation with its principal place of business in Ontario. (Cmplt. (Dkt. No. 1) ¶ 23) Spanski and its subsidiaries "distribut[e] Polish-language television and radio content in North and South America via satellite and cable television, as well as via the Internet." (Id.) TVP is a "state-owned business corporation organized under the laws

of Poland. TVP owns and operates several Polish language television channels including the TVP Polonia channel (formerly known as TV Polonia)." (Id. ¶ 24)

On December 14, 1994, Spanski and TVP entered into a Polish-language contract (the "Agreement") in which TVP granted Spanski the exclusive right to distribute TV Polonia programming in North America and South America.¹ (Spanski Decl. (Dkt. No. 16), ¶ 20 & Exs. 17, 18) In the Agreement, TVP agreed to provide Spanski with television programming produced and broadcast by TV Polonia amounting to at least sixteen hours of broadcast time per day. (Id., Ex. 18 at 3)² Spanski agreed to, inter alia, "broadcast the [TV Polonia programming] via satellite, cable connections and other . . . distribution technologies" in North and South America; recruit 25,000 subscribers for the programming; begin continuous broadcasting of the TV Polonia programming by December 1, 1995; and pay TVP 8% of revenues generated each quarter from subscriber fees and advertising sales. (Id. at 4)

The term of the contract is addressed in Section 10 of the Agreement:

1. The term of this Agreement is 25 (twenty-five) years and it comes into effect on the date of its signing. TVP and SEI may extend its term by subsequent 10 year periods.

2. Each party may terminate this Agreement if the other party commits a significant violation of its provisions. . . .

(Id. at 6) Given that the Agreement was entered into on December 14, 1994, the initial 25-year term expires on December 13, 2019.

---

¹ Both sides appear to agree that the document attached as Exhibit 17 to the Spanski Declaration is the original Polish version of the Agreement, and that Exhibit 18 to the Spanski Declaration is an accurate English translation of the Agreement. (See Spanski Decl. (Dkt. No. 16), Exs. 17-18; Def. Appx. 2 (Dkt. No. 35), Ex. 1) These documents bear a date of 1996, however, and neither side explains the discrepancy.
² All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

The Agreement provides that it is governed by Polish law. (Id. at 7) In 2002, however, the parties amended the Agreement to provide that "[t]he Agreement is subject to the law of the State of New York, USA, and all disputes will be regulated by a Federal Court in New York City." (Spanski Decl. (Dkt. No. 16), Ex. 22 at 4)

## II. THE PARTIES' DISPUTE

On December 14, 2018, Spanski provided TVP with written notice that Spanski was exercising its alleged right under the Agreement to "extend[] the term of the Agreement for an additional ten years pursuant to paragraph 10.1 of the Agreement." (Cmplt. (Dkt. No. 1) ¶ 28) In a January 11, 2019 letter, TVP rejected Spanski's attempt to extend the term of the Agreement, asserting that Spanski did not have a unilateral right to extend the term of the Agreement. According to TVP, "'[a]ny extension of the Agreement would require the mutual consent of both TVP and SEI.'" (Id. ¶ 29) Spanski then filed this lawsuit, in which it seeks a declaration that it has a right under the Agreement to unilaterally extend the term of the Agreement for an additional ten-year period. (Id. at 12)

The parties' dispute turns on Section 10.1 of the Agreement:

> The term of this Agreement is 25 (twenty-five) years and it comes into effect on the date of its signing. TVP and SEI may extend its term by subsequent 10 year periods.

(Spanski Decl. (Dkt. No. 16), Ex. 18 § 10.1)

As noted above, the Agreement is a Polish-language contract. In connection with this case and several other litigations against TVP, however, Plaintiff has proffered a "certified English translation" of the Agreement, including Section 10.1. (Id., Ex. 18) The language

3

quoted above from Section 10.1 of the Agreement is from the "certified English translation" that Plaintiff has submitted to this Court and several other courts. (Id. ¶ 20)[3]

Although Plaintiff has repeatedly relied on the English translation cited by the Court, Plaintiff now contends that the language "TVP and SEI may extend its term by subsequent 10 year periods" should be read to say "'TVP and SEI [each of them] may extend [the Agreement's] term by subsequent ten-year periods,'" or "TVP or SEI may extend [the Agreement's] term by subsequent ten-year periods." (Cmplt. (Dkt. No. 1) ¶ 9; Pltf. Expert Rpt. (Dkt. No. 18) ¶ 18)

In support of this argument, Plaintiff cites to the original Polish. The beginning of the sentence at issue – "TVP and SEI" – is premised on the original Polish: "TVP i SEI." (Spanski Decl. (Dkt. No. 16), Ex. 17 § 10; Ex. 18 § 10) Plaintiff agrees that the Polish word "i" is properly translated as "and" (see id.), but contends that "the connective 'and' ('i') is tantamount to the connective 'or' ('lub')." (Pltf. Expert Rpt. (Dkt. No. 18) ¶ 18) In other words, Plaintiff concedes that "i" is properly translated as "and," but also contends that "i" can also be translated as "or." Plaintiff thus asserts that the sentence at issue should be read to say that "TVP or SEI may extend its term for further ten-year periods," or as "TVP and SEI [each of them] may extend its term by subsequent ten-year periods." (Id.; Cmplt. (Dkt. No. 1) ¶ 9) According to Plaintiff, the Agreement grants either side the unilateral right to extend the Agreement in ten-year periods in perpetuity.

---

[3] Spanski submitted the same "certified English translation" of the Agreement in Spanski Enters. v. Telewizja Polska, No. 12 Civ. 957 (D.D.C. Feb. 6, 2015) (Pltf. Resp. to Def. Stmt. of Material Facts (Dkt. No. 27) ¶ 9 & Ex. 35); Spanski Enters. v. Telewizja Polska, No. 14 Civ. 2570 (S.D.N.Y Apr. 18, 2014) (Piscora Decl. (Dkt. No. 26) ¶ 6 & Ex. 5); and Spanski Enters. v. Telewizja Polska, No. 7 Civ. 930 (S.D.N.Y Apr. 2, 2007) (Spanski Decl. (Dkt. No. 13) ¶ 6 & Ex. 2).

Defendant contends that "TVP i SEI" means "TVP and SEI," and that both sides must consent before the Agreement is extended beyond the initial twenty-five year term. (Def. Br. (Dkt. No. 31) at 8)

## III. PROCEDURAL HISTORY

The Complaint was filed on February 21, 2019. (Cmplt. (Dkt. No. 1)) Plaintiff seeks a declaration that it has properly exercised its alleged option under the Agreement to extend the Agreement for an additional term of ten years. (Id. at 12) On November 6, 2019, Plaintiff moved by order to show cause for a preliminary injunction barring Defendant from (1) interfering with Spanski's distribution of TV Polonia programming in North or South America; or (2) distributing or transmitting TV Polonia programming in North or South America. (Proposed Ord. (Dkt. No. 14)) On December 2, 2019, this Court conducted a hearing concerning Plaintiff's motion. (Dec. 2, 2019 Hrg. Tr.)

## DISCUSSION

## I. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act, which provides original jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330. The definition of "foreign state" includes "an organ of a foreign state or political subdivision thereof." 28 U.S.C. § 1603. Here, TVP is an organ of Poland, and this action arises from TVP's commercial activity in the United States – the distribution and transmission of Polish-language television programming. The Foreign Sovereign Immunities Act does not provide the organ of a foreign state with immunity where

5

"the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605. Accordingly, this Court has subject matter jurisdiction.

## II. LEGAL STANDARDS

### A. Preliminary Injunction Standard

A court may issue a preliminary injunction only where

> [First,] the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction.

Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (citations omitted).

This Circuit has held that "[t]he 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) Under this approach, the moving party "must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . ." Id. (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)) (emphasis added in Citigroup). The resulting analysis yields "flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation." Id. "Thus, a preliminary injunction may issue even if the probability of the movant ultimately prevailing is less than fifty percent." Pamlab, L.L.C. v. Macoven Pharm., L.L.C., 881 F. Supp. 2d 470, 475 (S.D.N.Y. 2012).

## B. Contract Interpretation Under New York Law

As discussed above, the Agreement – as amended in 2002 – provides that it "is subject to the law of the State of New York, USA, and all disputes will be regulated by the Federal Court in New York City." (Spanski Decl. (Dkt. No. 16), Ex. 22 at 4)

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)); see also Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument.") (citing Teitelbaum Holdings, Ltd. v. Gold, 48 N.Y.2d 51, 56 (1979)). However, "[w]here there are alternative, reasonable constructions of a contract, i.e., the contract is ambiguous, the issue 'should be submitted to the trier of fact.'" K. Bell & Assocs., 97 F.3d at 637 (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993)). "[T]he question of whether [a contract] is ambiguous is a matter of law to be determined by the Court." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 616 (2d Cir. 2001) (internal quotation marks and citations omitted).

"Straining a contract's language beyond its reasonable and ordinary meaning does not create an ambiguity. . . . Nor may an ambiguity be found where the contract has a definite meaning, and where no reasonable basis exists for a difference of opinion about that meaning." Brass v. American Film Techs., Inc., 987 F.2d 142, 149 (2d Cir. 1993) (citations omitted).

Under New York law, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." W.W.W.

7

Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." Id.; see also Schron v. Troutman Sanders LLP, 20 N.Y.3d 430, 436 (2013) ("[E]vidence is inadmissible to alter or add a provision to a written agreement.").

Here, the Agreement contains an integration clause, which states that "[t]his Agreement contains all understandings between the parties hereto." (Spanski Decl. (Dkt. No. 16), Ex. 18 § 15) An integration clause establishes "the parties' intent that the [a]greement [in question] is to be considered a completely integrated writing," Primex Int'l Corp. v. Wal-Mart Stores, 89 N.Y.2d 594, 600 (1997), and "[a] completely integrated contract precludes extrinsic proof to add to or vary its terms." Id.

"Extrinsic evidence of the parties' intent may be considered . . . if the agreement is ambiguous," however. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002); see also Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade, 98 A.D.3d 403, 406 (1st Dep't 2012) ("'[E]xtrinsic evidence may not be considered unless the document itself is ambiguous.'" (quoting South Rd. Assoc., LLC v. Int'l Bus. Machs. Corp., 4 N.Y.3d 272, 278 (2005))). "An ambiguity exists where the terms of [a contract] could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)). No ambiguity exists, however, when contract language has "a definite and precise meaning, unattended by danger of misconception in the purport of the

[contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978) (citations omitted).

"In accordance with cardinal doctrines of contract interpretation, courts must endeavor to read a contractual document in a manner that gives effect to all of its provisions and that causes them to be consistent with one another." DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 729 (S.D.N.Y. 2003) (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)). Moreover, "'a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect.'" JA Apparel Corp. v. Abboud, 568 F.3d 390, 405 (2d Cir. 2009) (quoting Corhill Corp. v. S.D. Plants, Inc., 9 N.Y.2d 595, 599 (1961)); see also Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) ("[T]he court may not read [an] agreement to make any of its terms meaningless, or construe its language to render particular provisions 'mere surplusage.'" (citations omitted)), aff'd, 387 F. App'x 50 (2d Cir. 2010); Del Glob. Techs. Corp. v. Park, 3 Civ. 8867 (PGG), 2008 WL 5329963, at *3 (S.D.N.Y. Dec. 15, 2008) ("It is a 'cardinal rule of contract interpretation that a court shall not interpret an agreement in a way which leaves a part meaningless or ineffectual.'" (quoting Hauser v. W. Group Nurseries, Inc., 767 F. Supp. 475, 488 (S.D.N.Y. 1991))). Finally, courts "must avoid interpreting a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'" Landmark Ventures, Inc. v. Wave Sys. Corp., No. 11 Civ. 8440, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012) (quoting In re Lipper Holdings, LLC, 1 A.D.3d 170, 170 (1st Dep't 2003)).

9

## III. ANALYSIS

### A. Likelihood of Success or Fair Ground for Litigation

Spanski contends that the plain language of the Agreement unambiguously grants it the unilateral right to extend the Agreement in ten-year increments in perpetuity. (Pltf. Br. (Dkt. No. 15) at 20-22) To satisfy the "likelihood of success or fair ground for litigation" element, Spanski must thus proffer an interpretation of the plain language of the Agreement that persuasively demonstrates that the Agreement grants it the unilateral right to extend the Agreement in perpetuity.

As discussed above, resolution of this issue turns on Section 10.1 of the Agreement, which reads, "TVP and SEI may extend its term by subsequent 10 year periods." (Spanski Decl. (Dkt. No. 16), Ex. 18 § 10) In the original Polish, the first three words are "TVP i SEI," with "i" being the Polish conjunction. (Spanski Decl. (Dkt. No. 16), Ex. 17 § 10) Although Spanski has submitted to this Court and several other courts an English translation that says "TVP and SEI," it now argues that "TVP i SEI" means "TVP or SEI." (Pltf. Expert Rpt. (Dkt. No. 18) ¶ 20) According to Spanski, Section 10.1 should be read as "TVP or SEI may extend its term for further ten-year periods," or as "TVP and SEI [each of them] may extend its term by subsequent ten-year periods." (Spanski Decl. (Dkt. No. 16) ¶ 20; Cmplt. (Dkt. No. 1) ¶ 9) The Court concludes that Spanski's interpretation of the plain language of Section 10.1 of the Agreement is not persuasive.

As an initial matter, Spanski's repeated adoption of the English translation "TVP and SEI" significantly undermines its current effort to argue that the phrase at issue should be understood as "TVP or SEI." Based on the "certified English translation" Spanski has proffered in this action and in several other litigations, the language that was selected by the parties is

"TVP and SEI." As Plaintiff's expert's report makes clear, the parties could have chosen to use the phrase "TVP lub SEI," which means "TVP or SEI." (Pltf. Expert Rpt. (Dkt. No. 18) ¶ 18) Although Plaintiff's expert contends that "the connective 'and' ('i') is tantamount to the connective 'or' ('lub')," (id.) it is obvious that "i" and "lub" are two different words; 'i' means "and" and "lub" means "or." The parties here chose to use the word "i," and this Court is not free to substitute the word "lub" for the word that the parties actually chose. In short, the language selected by the parties supports Defendant's interpretation of the Agreement.

Immediately adjacent language in the Agreement likewise supports Defendant's interpretation of the contract. The next sentence after "TVP and SEI may extend its term by subsequent 10 year periods" reads: "Each party may terminate this Agreement if the other party commits a significant violation of its provisions." (Spanski Decl. (Dkt. No. 16), Ex. 18 § 10) Accordingly, when the parties intended to provide for unilateral rights, they referred to "each party." There is no such language in the clause at issue. The Agreement could have said, in the immediately preceding sentence, "each party may extend [the Agreement's] term by subsequent 10 year periods," or "either TVP or SEI may extend [the Agreement's] term by subsequent 10 year periods." Instead, the parties chose the conjunctive, indicating that TVP and SEI – together – could decide to extend the term of the Agreement in ten-year increments.

The Court must also interpret the Agreement in such a way as to avoid an absurd result. See Landmark Ventures, Inc. v. Wave Sys. Corp., 2012 WL 3822624, at *3 ("The Court must avoid interpreting a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'"). It strains belief that either side – in connection with a distribution agreement that had an initial term of twenty-five

11

years – would have agreed to give the other side the unilateral right to continue the agreement – on the same terms – in perpetuity.

Spanksi argues, however, that unless its interpretation is adopted, the phrase "TVP and SEI may extend [the Agreement's] term by subsequent 10 year periods" is superfluous. (Pltf. Br. (Dkt. No. 15) at 20-22) As discussed above, "[i]t is a 'cardinal rule of contract interpretation that a court shall not interpret an agreement in a way which leaves a part meaningless or ineffectual.'" Del Glob. Techs. Corp. v. Park, 2008 WL 5329963, at *3. A refusal to adopt Plaintiff's interpretation of the extension provision does not render that provision superfluous or meaningless, however.

The extension provision addresses an important issue: the right to extend the 25-year Agreement. One possible interpretation of the extension provision is that the parties agreed that an extension in ten-year increments would be possible, but only if "TVP and SEI" agreed to such an extension. Interpreting the extension provision in this fashion, the parties selected this language to make clear that neither TVP nor SEI would have the unilateral right to extend the Agreement.[4]

Acknowledging that Spanski – in order to obtain a preliminary injunction – need not demonstrate that its chance of prevailing on the merits is 50% or greater – see Pamlab L.L.C., 881 F. Supp. 2d at 475 – the Court concludes that Spanski's showing – at this stage of the litigation – is not sufficient to justify the issuance of a preliminary injunction. Stated another way, Spanski's interpretation of the plain language of Section 10.1 of the Agreement is not

---

[4] Spanski argues that "the drafters [of the Agreement] repeatedly used the phrase 'the parties' when mutual agreement was required." (Pltf. Reply Br. (Dkt. No. 36) at 9) But "TVP and SEI" are "the parties" to the Agreement; accordingly, "TVP and SEI" is synonymous with "the parties."

sufficiently persuasive to justify the issuance of injunctive relief.[5]  Plaintiff has not demonstrated that its interpretation of the plain language of the extension provision is likely to be successful,

---

[5] Given that both sides assert that the plain language of the Agreement unambiguously supports their interpretation (see Pltf. Br. (Dkt No. 15) at 20-22; Def. Br. (Dkt. No. 31) at 8-9), this Court's resolution of Plaintiff's motion is not premised on parol evidence.  Suffice it to say, however, that the parol evidence that has been submitted to the Court does not suggest that the Agreement was intended to grant either side the unilateral right to perpetually extend the Agreement in ten-year increments.

It appears that negotiations regarding Section 10.1 – the term provision – took place over a five-day period in November 1994.  During this time, the parties exchanged telefaxes containing proposed language.  See Dec. 2, 2019 Hrg. Tr.  On Thursday, November 24, 1994, TVP faxed Spanski a draft Agreement that provided for a twenty-five year term and said nothing about an extension. (Dkt. No. 35-1 at 78)  On Friday, November 25, 1994, Spanski proposed language stating that "[t]his Contract shall be concluded for a period of 25 (twenty five) years with TVP and SEI having the right to extend it by successive ten-year periods. . . ." (Spanski Decl. (Dkt. No. 16) ¶ 14 & Ex. 10 at 4)  This language – which was not adopted – could be read to suggest that either TVP or SEI had the right to unilaterally extend the Agreement's term.

In a telefax later that day, TVP proposed that the words "to mutually agreed extension" be added to Spanski's proposed language for Section 10.1.  (Id. ¶¶ 15-16, Ex. 12 at 4, Ex. 14 at 3)  The "mutually agreed" language likewise does not appear in the final version of the Agreement.

Spanski replied by telefax on Saturday, November 26, 1994.  Spanski argued that if the extension was subject to mutual consent, "we will have to renegotiate the contract."  Spanski warned that the 8% fee SEI had agreed to pay TVP for its programming would likely be reduced twenty-five years hence.  According to Spanski, it was in TVP's interest to lock-in the 8% fee:

> TVP's and SEI's extension rights guarantee the interest of both TVP and SEI.  It is highly probable that in 25 years the level of fees that SEI agreed to pay to TVP (8%) will be a complete "dinosaur."  Then, we can apply fees of approximately 2%. (Those that are currently applicable are 4% and there is a clearly declining tendency). In case of an "agreeable extension" we will have to renegotiate the contract.  This will obviously impact the vital elements of this Contract.

(Id., Ex. 16 at 6)

On Monday, November 28, 1994, TVP faxed Spanski what became the final version of the Agreement. (Dkt. No. 35-2 at 18)  The final version of the extension provision does not contain the "having the right to extend" language proposed by Spanski, nor does it contain the "mutually agreed extension" language proposed by TVP.  Instead, the extension provision merely states that "TVP and SEI may extend [the Agreement's] term for successive ten-year periods." (Id.)

13

nor has Plaintiff demonstrated that its plain language interpretation raises "sufficiently serious questions going to the merits to make them a fair ground for litigation." Salinger, 607 F.3d at 79.[6] Accordingly, Plaintiff's motion for a preliminary injunction will be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction (Dkt. No. 14) is denied.

Defendant's cross-motion for summary judgment (Dkt. No. 30) is stricken, based on Defendant's failure to comply with this Court's pre-motion conference requirement. The Court notes that pre-discovery motions for summary judgment are disfavored in this Circuit. "'Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery.'" Ass'n of Car Wash Owners Inc. v. City of

---

The parties thus opted for contract language that is less clear than what they had proposed in their competing telefaxes. Having said that, Spanski has not convincingly demonstrated that the language that was chosen was intended to grant either side the unilateral right to perpetually extend the Agreement in ten-year increments.

[6] Spanski alleges that, over the past twenty-five years, TVP has engaged in a variety of bad faith conduct in breach of the Agreement. For example, Spanski cites 2007 litigation in this District that ended in a 2009 settlement in which TVP acknowledged that, with limited exceptions, SEI would remain the exclusive distributor of TV Polonia in North America and South America for the duration of the Agreement. (Spanski Decl. (Dkt. No. 16), Ex. 23) In 2010, soon after this settlement, Spanski filed another lawsuit in this District alleging that TVP had licensed TV Polonia to Polvision, Spanski's competitor. (Id. ¶ 31) Spanski won a judgment of $118,680 in damages. (Id. ¶ 32) And in 2012, SEI brought a copyright infringement action against TVP in the U.S. District Court for the District of Columbia, premised on TVP's distribution of TV Polonia in the U.S. via the Internet. (Id. ¶ 33) The district court found that TVP had infringed SEI's exclusive copyrights and awarded SEI $3,060,000 in damages as well as over $850,000 in costs and attorneys' fees. (Id. ¶ 34) SEI alleges that TVP has failed to pay this judgment. (Id. ¶ 35)

The issue before this Court is not whether TVP has engaged in bad faith conduct in the past, however. Instead, the issue is whether Spanski has offered a persuasive interpretation of the plain language of the Agreement's extension provision that gives it a unilateral right to extend the Agreement in perpetuity. As discussed above, the Court concludes that it has not.

New York, 911 F.3d 74, 83 (2d Cir. 2018) (quoting Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)). Plaintiff's motion to strike a declaration submitted in support of Defendant's cross-motion for summary judgment is denied as moot. (Dkt. No. 39)

The parties are directed to submit a joint letter by December 9, 2019, stating how they wish to proceed in light of this Court's ruling denying Plaintiff's motion for a preliminary injunction.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 14, 30, 39).

Dated: New York, New York
December 2, 2019

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge